UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOAN FIORE, JAVION & SAM'S 24-
HOUR TOWING,

    Plaintiffs,

v.

CITY OF DETROIT,

    Defendant.

Case No. 18-11565
Honorable Laurie J. Michelson

**OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [6]**

Javion & Sam's 24-Hour Towing, owned by Joan Fiore, has towed vehicles for the City of Detroit for decades. Joan Fiore was previously married to Gasper Fiore, who himself owned towing companies, including Boulevard and Trumbull (B&T). Javion and B&T shared many resources over the years, including an attorney, employees, and office space. Gasper was recently convicted by way of guilty plea in a public corruption case. He was also implicated in a separate bribery scandal resulting in the conviction of a City of Detroit official over towing rotations—including rotations for Javion. Given Javion's implication in this corruption, and the shared resources of the Fiore towing companies, the City made a preliminary decision to terminate Javion's ability to bid for additional towing contracts with the City.

Joan Fiore and Javion have sued the City for equal protection violations, claiming they are being discriminated against because Joan was married to Gasper Fiore. Javion now seeks a preliminary injunction for the immediate return of its bidding rights. Javion alleges that the City had no rational basis for terminating its right to bid. The Court disagrees.

For the reasons that follow, the Court will deny Javion's preliminary injunction motion.

# I.

## A.

On January 2, 2018, Celia Washington, former Deputy Police Chief for the City of Detroit, pled guilty to conspiracy to commit federal program bribery. (Def. Ex. 10.) Almost two years earlier, Washington, who oversaw the Detroit Police Department's (DPD) private towing rotations, accepted around $4,000 in cash from Gasper Fiore. (Def. Ex. 13.) Wiretap interceptions involved in the investigation of Washington uncovered a conversation in which she asked Gasper Fiore to send an email to her personal email address with the towing rotations he wanted her help in securing. (*Id.*) The email response identified the following towing companies: B&T, Javion, Gene's, B&G, which all had existing towing rotations with the City, as well as E&G and Troy Auto Bans (Troy Abans), which did not. (*Id.*) At that time, Gasper Fiore owned B&T. (*See* R. 42, PageID.1165.) Joan Fiore owned and still owns Javion. (Pl. Ex. 1, 2.) She used to own Gene's and B&G Towing, too, but sold them to business partners. (R. 42, PageID.1125–1126.)

On May 7, 2018, James Heath, the former Inspector General for the City of Detroit, sent a letter to Mayor Michael Duggan making an initial recommendation that the City not consider bids for towing contracts from the companies included in the Washington email and that the companies be immediately removed from the towing rotation. (Def. Ex. 1.) The letter was also sent to Boysie Jackson at the Office of Contracting and Procurement, and Lawrence Garcia and Charles Raimi at Corporation Counsel. (*Id.*) As support for the recommendation, Heath cited to (publicly disclosed) wiretap-intercepted conversations between Gasper Fiore and Joan Fiore in which Gasper told Joan that Celia Washington wanted an email sent to her personal email address that specified which towing rotations they wanted. (*Id.*) Gasper instructed Joan to ask their daughter, Jennifer Fiore, to send the email with the rotations they wanted for their towing businesses. (*Id.*) That is the email

2

that ultimately included Javion. Heath further cited Washington's guilty plea, in which she admitted to taking bribes from Gasper Fiore for favorable treatment in towing rotations. (*Id.*) Heath also highlighted the various areas of overlap between the companies owned by the Fiores, including business locations, employees, and office space. (*Id.*) This overlap also included the fact that Gasper Fiore was advocating for towing rotations for Joan Fiore's company, Javion. (*Id.*)

The following day, Raimi, deputy corporation counsel, sent a letter to B&T counsel Joseph Shannon and Nicholas Bashand, the attorney shared by B&T and Javion (R. 42, PageID.1216). (Pl. Ex. 4.) This letter relayed the Inspector General's recommendations and Raimi's understanding that the respective city agencies would follow those recommendations, and it also invited their clients to present evidence to the Inspector General to contest those recommendations. (*Id.*)

That same day, Jennifer Bentley at the Office of Inspector General, also sent a letter to Javion's counsel to inform him of the opportunity to participate in an administrative hearing to present testimony and information that they would like the Inspector General to consider before making a final recommendation. (Pl. Ex. 6.) The letter specifically requested that the information focus on the historical and present connections between Gasper Fiore and each of the involved companies; the connections between Javion, Gene's, B&G, and Citywide, including shareholders, employees, bank accounts, and locations; the business practices of each company; information contained in the wiretaps; and communications with Washington and any other City official implicated in the wiretap information. (*Id.*)

The hearing for Javion took place on June 14, 2018. (Pl. Ex. 28.) Joan Fiore chose not to participate. (*See id.*) Instead, counsel for Javion presented the company's position.

Heath's tenure as Inspector General recently expired and a new Inspector General was appointed. (R. 34, PageID.887.) The new Inspector General has yet to issue a final recommendation following the administrative hearing. (R. 42, PageID.1068.)

**B.**

Fiore now sues the City of Detroit alleging that it violated her constitutional right to equal protection by terminating Javion's right to bid. She argues that as a class of one, the City is treating her differently than others similarly situated, had no rational basis for making its decision, and the decision was instead made because of personal animus.

Shortly after filing suit, Fiore filed a motion for preliminary injunction "to maintain the status quo allowing Javion to participate in the bidding." (*See* R. 6. PageID.17.) Defendants opposed the motion. (R.11.)

The Court held a three-day evidentiary hearing after which both parties submitted proposed findings of fact and conclusions of law. (R 35, 37, 39.)

**II.**

A court examines four factors when determining the appropriateness of a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012). "Each of these factors '[should] be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction.'" *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689–90 (6th Cir. 2014) (quoting *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)).

The Court is also mindful that injunctive relief is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *see also O'Toole v. O'Connor*, 802 F.3d 783, 788 (6th Cir. 2015) ("[P]reliminary injunctions are extraordinary and drastic remedies never awarded as of right.")

**A.**

There are preliminary matters that must be addressed before getting to the merits. First, because the new Inspector General has not made her final recommendation on whether to ban Javion from bidding, the Court must determine whether this claim is ripe for consideration. Second, the Court must determine whether Joan Fiore herself has standing, as the injury only pertains to her company, Javion.

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.'" *Kentucky Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505, 509 (6th Cir. 2006) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)). "Ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." *Id.* (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 294 (1997)). "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction, but, even in a case raising only prudential concerns, the question of ripeness may be considered on a court's own motion." *Id.* (quoting *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003)). The Court must consider three factors in weighing ripeness: first, "the likelihood that the harm alleged by the plaintiffs will ever come to pass"; second, "whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective

5

claims"; and third, "the hardship to the parties if judicial relief is denied at this stage in the proceedings." *Kentucky Press Ass'n, Inc.*, 454 F.3d at 509 (quoting *Adult Video Ass'n v. United States Dep't of Justice*, 71 F.3d 563, 568 (6th Cir. 1995)).

While close, the Court finds that the preliminary injunction issue is ripe for consideration. First, while the Inspector General has yet to make a final determination on the recommendation, Javion is currently banned from bidding and thus is currently being harmed. It is unknown when the Inspector General will issue her final recommendation. So Javion could continue to be harmed if the Court delayed ruling on the off-chance that the Inspector General or City would reverse its prior decisions. Second, the factual record is sufficiently developed to allow a fair adjudication of the claim on the merits. Lastly, the parties have expressed their preference for the Court to rule now. Because Javion is currently banned from bidding, and because the record of why and how that decision was made is well developed, the Court will proceed to adjudicate the merits of the claim.

But first, it will address Fiore's standing.

"To establish Article III standing at the pleading stage of a case, a plaintiff must allege a personal injury." *Old Blast, Inc. v. Operating Engineers Local 324 Pension Fund*, 663 F. App'x 454, 456–57 (6th Cir. 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "[A] shareholder of a corporation does not have a personal or individual right of action based solely on an injury to the corporation. Instead, only the corporation, or a shareholder acting derivatively, can sue to recover damages for a corporate injury." *Id*. at 457 (internal quotations omitted). This is the case even "where the person seeking redress is the corporation's sole shareholder." *Id* (citing *Canderm Pharmacal, Ltd. v. Elder Pharm., Inc.*, 862 F.2d 597, 602–03 (6th Cir. 1988)). A shareholder may sue in her individual capacity "if she suffers an injury that is

6

separate and distinct from the corporation's injury, but depreciation in the value of a shareholder's stock in a corporation" is not such an injury. *Id.* (internal citations omitted).

Further, "standing is not dispensed in gross." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650–51 (2017) (internal quotations omitted). Rather, a plaintiff must demonstrate standing for each claim and for each form of relief sought. *Id.* And when there are multiple plaintiffs, at least one plaintiff must have standing to seek each form of relief requested in the complaint. *Id.*

Because Joan Fiore has not identified how she personally suffered a separate and distinct injury from Javion when Javion's bidding rights were terminated, only Javion has standing on the relief requested in this motion.[1]

**B.**

The Court now turns to the preliminary-injunction factors, starting with Javion's likelihood of success on the merits.

**1.**

"Equal Protection claims can be brought by a 'class of one' where the plaintiff alleges that the state treated [it] differently from others similarly situated and that there is no rational basis for such difference in treatment." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 710 (6th Cir. 2005) (citation omitted). "The 'rational basis' test means that courts will not overturn government action 'unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational." *Id.* at 710–11 (citations omitted). "A 'class of one' plaintiff may

---

[1] The Court allowed Fiore to amend the complaint to add Javion, thereby eliminating any standing problem in deciding the motion for preliminary injunction.

7

demonstrate that a government action lacks a rational basis in one of two ways; either by negativ[ing] every conceivable basis which might support the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Id*. at 711 (citations omitted).

## 2.

To start, the City argues that a class-of-one claim is not available because this case involves government contracting. The City asserts that courts in this Circuit have held that government contracting decisions are inherently subjective and individualized and thus, not subject to class of one equal protection challenges. (R. 37, PageID.989 (citing *Snodgrass-King Pediatric Dental Assocs., P.C. v. DentaQuest USA Ins. Co.*, 79 F.Supp.3d 753, 766 (M.D. Tenn. 2015); *JDC Mgmt., LLC v. Reich*, 644 F.Supp.2d 905, 910 (W.D. Mich. 2009)).)

But Javion is not challenging the City's decision to not contract with it. Javion is challenging the City's decision prohibiting it from even bidding for a contract. And the City does not explain how the decision to allow someone to bid, rather than the decision of whether to accept that bid, is subjective and individualized. Regardless, the Court need not wade further into this issue because Javion fails to show a likelihood of success on the merits.

## 3.

First, Javion fails to identify companies that are similarly situated in all relevant respects that received different treatment from the City. *See Braun v. Ann Arbor Charter Twp.*, 519 F. 3d 564, 575 (6th Cir. 2008).

Javion initially suggests that it does not need to identify comparators. It believes the "law remains quite unsettled" in class-of-one claims and that courts have relaxed the requirement of identifying comparators when a plaintiff alleges a "pattern of unjustified harassment." (R. 35,

PageID.969 (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012)).) But Javion relies solely on Seventh Circuit cases for the claim that the law is unsettled. This does not appear to be the case in the Sixth Circuit.

Indeed, as the City points out, another court in this Circuit explicitly considered and rejected the standard suggested by Javion. (R. 37, PageID.990 (citing *Foster v. Judnic*, 963 F. Supp.2d 735 (E.D. Mich. 2013), *aff'd sub nom. Foster v. Michigan*, 573 F. App'x 377 (6th Cir. 2014)).) In *Foster*, the parties briefed a recent Seventh Circuit decision excusing the lack of comparators given a strong showing of animus. 963 F. Supp.2d at 760–61. But the court then concluded that "Sixth Circuit precedent requires the Court to identify similarly-situated persons." *Id.* at 761. And as late as this year, the Sixth Circuit reaffirmed that "to state a class-of-one equal protection claim, a party must show that the government treated similarly situated persons differently." *Superior Commc'n v. City of Riverview, Mich.*, 881 F.3d 432, 446 (6th Cir. 2018).

Thus, the Court finds that Javion must identify similarly-situated companies in order to establish a likelihood of success on the merits.

Javion fails to do so.

For a company to be similarly situated, it must be similar to Javion "in all relevant respects." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011). Here, that involves a towing company (or, generously, a City contractor) that was implicated in or associated with a bribery scheme involving the City of Detroit, resulting in criminal charges.

Javion points to two companies as comparators: unidentified towing companies owned by Anthony Soave and Green for Life Environmental, Inc. Neither qualifies.

Javion asserts that Detroit business owner Anthony Soave admitted to giving items to former Mayor Kwame Kilpatrick in exchange for preferential treatment. And while Kilpatrick was

convicted in a public corruption case, Soave still performs towing services for the City. (R. 35, PageID.971.) But Soave is not a company, and Javion fails to identify the companies owned by Soave that are allegedly similarly situated to Javion and still do business with the City. It is unknown if Soave wholly owns towing companies; if these companies were ever implicated in a bribery scheme involving City work; and what contracts they are permitted to bid on. It is also significant that the alleged misconduct involving Soave occurred in a previous administration at a time when the City did not have an inspector general to root out and eradicate this very type of misconduct. Indeed, it is understandable that the City is now taking steps to avoid the mistakes of its past. Soave's unidentified towing companies cannot serve as comparators to Javion.

Green for Life Environmental, Inc. is likewise not similarly situated to Javion. This is a Canadian company that purchased waste management company Rizzo Environmental Services. The new company has a contract with the City for waste management. Former Rizzo owner, Charles Rizzo, pled guilty to bribery (involving Macomb County contracts) in April 2018. (R. 186, PageID.901.) Javion alleges that Rizzo is or was involved with Green for Life Environmental, Inc. and so identifies it as a comparator. But the evidence presented was that Green for Life purchased Rizzo and contracted with the City before Rizzo pled guilty to bribery and that Green for Life had no involvement in the Rizzo misconduct. (R. 34, PageID.901). Nor was any evidence presented that Green for Life knew anything about Rizzo's bribery of Macomb County officials. And Javion does not produce any evidence that Rizzo was involved with Green for Life when Detroit contracted with that company or in any way after his indictment. Indeed, Jackson testified that, to his knowledge, Rizzo is not at all associated with Green for Life. (R. 34, PageID.899.) So Green for Life is not similarly situated to Javion in all relevant respects.

Because Javion has not identified similarly-situated companies that are still permitted to bid for towing contracts with the City, it is not likely to succeed on its class-of-one equal-protection claim.

**4.**

Even assuming that Javion was treated differently from relevant comparators, the City had a rational basis for terminating Javion's right to bid that it cannot rebut.

Rational basis review is very deferential. "Courts will not overturn government action 'unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational.'" *Warren*, 411 F.3d at 710 (quoting *Kimel v. Fla. Bd. Of Regents*, 528 U.S. 62, 84 (2000)). Indeed, "if there is any reasonably conceivable state of facts that could provide a rational basis for the state conduct, then the state has not violated the constitution." *Systematic Recycling LLC v. City of Detroit*, 635 F. App'x 175, 181 (6th Cir. 2015) (internal quotations omitted).

The City has more than met this standard. Javion's involvement in seeking to obtain towing rotations through corrupt means—and through the efforts of someone indicted in a separate corruption scandal—is a rational basis for the City to remove its business.

Start with the Inspector General's mandate. The Inspector General is charged with determining whether a contractor "behaves in a way which is fraudulent, corrupt, wasteful or abusive." (R. 34, PageID.837.) Heath testified that "the question [he] was presented with as Inspector General was whether there was an unreasonable likelihood of fraud, abuse, waste, corruption that had occurred or might occur going forward." (R. 34, PageID.802.) He testified that "when [the City has] a contractor or someone who is seeking to be a contractor who is—it appears

11

is engaged in at least furthering information between a high-ranking city official who is accepting a bribe from another person, that's something that's, of course, of great concern to [the City]. And then also [the City is] very much interested in the connections between that proposed contractor and the person who has already been convicted of paying bribes in another municipality but who was paying bribe to a high-ranking city official." (R. 34, PageID.795.) Rooting out corruption, or the appearance of corruption, is a rational basis for government decision. *See Systematic Recycling LLC*, 635 F. App'x at 181–82.

So the Inspector General expressed that he was "very much concerned about any involvement that any potential contractor would have with someone who, in fact, did pay a bribe especially when that bribe goes to the benefit of the proposed contractor and there are, you know, connections between the proposed contractor and the bribe payer." (R. 34, PageID.802.) He recited a strong factual basis for his ultimate recommendation. He cited the conversation on April 28, 2016, when Celia Washington called Gasper Fiore to ensure that he would get his applications for towing permits submitted by the deadline. (Def. Ex. 1.) Shortly after that conversation, Gasper spoke with Joan Fiore and relayed that Washington wanted an email sent to her personal email account specifying which towing rotations they wanted. (*Id*.) Gasper directed Joan to instruct Jennifer Fiore, their daughter, to send the email. Jennifer sent the email. (*Id*.) That email listed Javion. The Inspector General noted that many of the towing companies listed in the email, including Javion, had overlapping business locations, employees, and office space. (*Id*.) Washington later pled guilty to bribery by accepting $4000 from Gasper Fiore. (Def. Exs. 1, 10.) And Gasper Fiore subsequently pled guilty to bribing Clinton Township officials for towing permits. (Def. Ex. 30.)

Against this factual backdrop, the City had a rational basis for terminating Javion's bidding rights. Indeed, the testimony at the hearing revealed just how much information supported the concern that Javion was implicated in a bribery scheme by Gasper Fiore who owned another implicated towing company with connections to Javion. More specifically, Javion and B&T have the same people answering the phones (R. 42, PageID.1164–1165), share other employees (R. 42, PageID.1167), share common work space (*Id.*), share the same parcel of land (R. 42, PageID.1163), share an attorney (R. 42, PageID.1216), share software (R. 42, PageID.1193), share insurance (*Id.*), share yard space—including the comingling of stored vehicles (R. 34, PageID.921), and share signage (R. 42, PageID.1195). Indeed, DPD Lieutenant Michael Parrish testified that the nature of the relationship between these companies "stand[] in stark contrast to the relationship that exists between other tow companies. They never seem to be competitors." (R. 34, PageID.944.) So irrespective of whether Joan Fiore has ever been involved in or charged with any criminal activity, the overlap of several Fiore towing companies, coupled with Gasper's payment to Washington for the benefit of Javion, resulting in Washington's bribery conviction, provides a rational basis for the City's decision to refuse bids for towing work from Javion.

**5.**

Javion's attempts to "negative" the City's rationale do not persuade.

As a threshold matter, Joan Fiore's testimony that she had no knowledge of any wrongdoing involving Javion and that, in fact, she has come to learn that the bribery did not include Javion (R. 42, PageID.1357), is simply not credible. Her phone conversation with Gasper involved having their daughter provide the names of towing companies to the personal email of Celia Washington, the city official responsible for towing contracts. And whether she read it or not, Joan testified she was aware of the email. (R. 42, PageID.1293.) She also testified that she was aware

13

of the Celia Washington bribery case. (R. 42, PageID.1355.) And there can be no dispute that case implicated Javion.

Similarly, whether Joan Fiore understood that the phone call with Gasper Fiore concerned bribery is almost immaterial. The two spoke about submitting the bids "they" wanted. That the companies considered their bids collectively raises a question about the extent of their separateness, such that Gasper's actions alone can reasonably raise concerns about Javion.

Javion also contends that Joan Fiore and Javion were not involved in the bribery.

But, again, Javion misses the point. The City did not need to *prove* Javion's involvement, or demonstrate that Javion committed any criminal activity. It merely needed to make a *rational* decision based upon the information it had. *See Systematic Recycling*, 635 F. App'x at 181–82. And on the record before the Court, it did.

The fact that Celia Washington got caught and so Javion may not have ultimately benefitted from the bribe, does not alter the Court's conclusion. The City had a rational basis for deciding not to conduct business with a company for which a bribe was given—benefit or not. *See id.*

### 6.

Next, Javion contests the rational basis of the City's decision by arguing that it was motivated by personal animus, primarily against Joan Fiore.

"To demonstrate animus or ill-will, a plaintiff must prove that the challenged government actions were motivated by personal malice *unrelated to the defendant's official duties*." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 837–38 (6th Cir. 2009) (internal quotations omitted) (emphasis in original). Courts have interpreted this to mean that "the government official must have some pre-existing bias or motive to retaliate against the plaintiff." *Slusher v. Delhi Twp., Ohio*, No. 1:08-273, 2009 WL 2145608, at *7 (S.D. Ohio July 14, 2009).

In *Slusher*, the court provided that "[a] useful analogy" for this test is the extrajudicial court doctrine: "negative opinions about a party developed by the trial judge during the course of the proceedings generally are insufficient to justify recusal on the grounds of bias," but personal bias "that emanates from some source other than participation in the proceedings or prior contact with related cases" should compel recusal. *Id*. at *8.

Javion fails to meet this standard of animus.

First, none of the City officials who testified at the hearing stated or suggested that they held any personal animus or ill-will toward Javion or its owner Joan Fiore unrelated to what they knew or learned about them during their official duties. Legal counsel for the City, Charles Raimi, testified about his concerns regarding Joan Fiore's alleged failure to pay certain City taxes. (R. 33, PageID.603.) But he also testified that he does not have an opinion of Joan Fiore "other than what [he's] learned in connection with looking at tax records and so forth." (R. 33, PageID.603.) Lieutenant Parrish testified about concerns with the way Javion was storing towed cars. (R. 34, PageID.921.) But he also testified that he does not have an opinion of Joan Fiore, "other than what [he] testified to" that day—namely, his experience with Javion in his capacity as a DPD officer. (R. 34, PageID.946.) Jackson, who was involved in the decision to terminate certain existing contracts between Javion and the City pursuant to the terms of those contracts, similarly testified that he has no bias against Joan Fiore. (R. 904, PageID.904.) And former Inspector General Heath also testified that he has no pre-existing animosity for Joan Fiore, and that his recommendation that the City preclude Javion from bidding was not in any way based upon animus toward Fiore. (R. 34, PageID.873.) The Court has no reason to question this testimony or to find that these witnesses harbored animus unrelated to their official duties.

15

Javion points to other statements from city officials in newspaper articles that the City will no longer do business with the Fiores as evidence of animus. But no evidence was presented to suggest that these remarks are unrelated to those officials' business duties as opposed to personal feelings they have about Joan Fiore. (R. 6-5; 6-6.)

Besides public statements, Javion also points to certain City actions as evidence of the City's animus. These actions include the City's decision to terminate Javion's towing contracts with the Detroit Police Department in July 2017, the City's refusal to give Joan Fiore a personal income tax clearance, the City's refusal to allow Joan Fiore to submit a woman-based business certification application, and a federal lawsuit that the City filed against Joan Fiore.

Like the public statements, none of these actions evidence personal animus that is unrelated to official duties. Nor does Javion explain how these actions demonstrate personal animus as opposed to legitimate business decisions.

Take, for example, the City's decision to terminate Javion's towing contract with the Detroit Police Department in July 2017. Javion asserts that this decision was made without reason. It goes so far as to analogize this decision to "someone discriminatorily firing a person because of her religion" and then creating a post-hoc rationalization to cover up the discrimination. (R. 39, PageID.1026.) But Javion ignores the terms of the contract which expressly permitted either side, including the City, to terminate it without reason. And Boise Jackson testified that, after being directed by the City Law Department, he terminated the contract for convenience, meaning that it was done without cause. (R. 34, PageID. 892, 894, 898.) He was permitted to do so in the course of his official duties.

And while the City did not need a reason for terminating the contact, it had one. Raimi testified that the decision was based upon Gasper Fiore's recent indictment for bribery and the

16

relationships between the Fiore-owned companies. (R. 33, PageID.669.) Raimi testified that "[i]t was certainly common knowledge that there were overlapping, extreme overlapping of businesses. Everybody knew about Javion & Sam's and Boulevard & Trumbell sharing locations and employees, equipment." (R. 33, PageID.670.) That the City had concerns about Joan Fiore's business and tax dealings and took certain actions as a result, all seemingly in the course of the City's official business duties, does not create the type of animus or ill-will to negate the rational basis for the City's decision to preclude Javion from bidding on upcoming towing contracts.

Thus, the Court will go not through each alleged wrong, as Javion does not establish how these actions demonstrate personal animus unrelated to the City's official duties. Indeed, the City is a vast municipality with voluminous employees and agencies performing wide-ranging duties. Yet Javion does not even establish that the people who allegedly made the decisions to take the actions Javion alleges were made with animus were even involved in deciding whether Javion could place bids on towing contracts. In other words, Javion cannot simply assert that one agency's actions demonstrate animus on behalf of another agency for an unrelated decision.

Accordingly, because Javion cannot negate every conceivable basis for the City's decision to preclude Javion bids or show that the decision was the result of personal animus, Javion has failed to demonstrate a likelihood of success on the merits of its equal protection claim. So the first factor weighs strongly in the City's favor.

## C.

Moving to the second factor, Javion cannot show irreparable harm.

Harm from the denial of a preliminary injunction is irreparable if the harm is not "fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). "[A]n injury is not fully compensable by money damages if the

nature of the plaintiff's loss would make damages difficult to calculate." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

It is true, as Javion argues, that a violation of a plaintiff's constitutional rights can constitute irreparable harm. *See McNielly v. Land*, 684 F.3d 611 (6th Cir. 2012). But because Javion has not shown a strong likelihood of success on its equal protection claim, irreparable harm is not presumed. *See id*. at 620–21. Nor has Javion otherwise established irreparable harm.

It alleges, without evidentiary support, that a denial of the injunction would spell the end of the company. (R. 6-1, PageID.31 (citing *Warren*, 411 F.3d at 711–12).) While Joan Fiore testified that "100 percent" of Javion's business is with the City, the testimony also established that nothing prevents Javion from seeking business from other municipalities or private entities. (R. 42, PageID.1357.) But when asked about other such work, Joan Fiore testified that Javion had not even tried. (R. 42, PageID.1358.) Indeed, she could not name a single private company she has contacted for business or specifically identify a single entity or individual who refused to do business with Javion because of negative publicity caused by the City. (R. 42, PageID.1359). So Javion cannot establish that the loss of City contracts would necessarily end the business.

Javion also alleges that the damage to the company's reputation and the loss of its customers' goodwill constitutes irreparable harm. "[A] loss of business goodwill may constitute irreparable harm because of the difficulty in calculating damages." *Langley v. Prudential Mortg. Capital Co., LLC*, 554 F.3d 647, 649 (6th Cir. 2009). But Joan Fiore testified that, with her accountant, she expects to be able to calculate her damages, including damages to Javion's reputation. (R. 42, PageID.1147.) Furthermore, Javion failed to establish how the City's termination of Javion's bidding rights would cause reputational damage and loss of customer goodwill. There is nothing in the record from any customer regarding its perception of Javion.

18

Indeed, it is unclear who these customers even are. And from Joan Fiore's testimony, it appears that any reputational losses would stem primarily from media reporting. (*See, e.g.,* R. 42, PageID.1258.)

Irreparable harm does not weigh in Javion's favor.

**D.**

As for the remaining factors, the City has shown that it would suffer harm should the injunction be granted. Lieutenant Parrish testified that doing business with a towing company implicated in illegal activity would harm the public's trust in the police department (R. 34, PageID.923–924.) He said this "could affect the communities' ability to have faith in [DPD] to safeguard their property," it would be a "direct blow to [their] crime-fighting efforts," and it would "affect a potential witness's willingness to cooperate with the department and to provide information and [the department is] nothing without [its] witnesses." (*Id.*) The public interest also militates against an injunction. The City of Detroit is seeking to move past its history of public corruption. There is no benefit to the public in maintaining the old "business as usual" mentality and forcing the City to do business with a company implicated in a pay-to-play scandal.

In sum, none of the factors weigh in favor of granting the extraordinary remedy of a preliminary injunction to Javion.

**III.**

Before concluding, the Court is aware that Javion and Joan Fiore have moved to amend their complaint. (R. 38.) Defendants oppose the request. (R. 10.) But the Court will grant this motion and give Plaintiffs an opportunity to address the pleading deficiencies identified in Defendants' motion to dismiss. Fed. R. Civ. P. 15(a)(2). So this motion (R. 10) will be denied as moot. The City will, of course, have an opportunity to respond to the amended complaint.

Lastly, the City seeks damages pursuant to 42 U.S.C. § 1988. But because the Court is not dismissing the suit, such damages are not yet appropriate to consider.

## IV.

For the foregoing reasons, the Court DENIES Plaintiffs' motion for a preliminary injunction (R. 6). As this ruling does not end the case, Defendant's request for damages pursuant to 42 U.S.C. § 1988 is denied as premature.

It is further ordered that Plaintiffs' motion to amend the complaint (R. 38) is GRANTED, and Defendant's motion to dismiss (R. 10) is DENIED AS MOOT.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Date: October 16, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, October 16, 2018, the Court's ECF system.

s/William Barkholz
Case Manager